UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jeremy RYAN,<br><br>         Plaintiff,<br><br>v.<br><br>BEST IN SLOT, LLC, et al.<br><br>         Defendants. | Case No.: 25-cv-2348-AGS-BLM<br><br>**ORDER PARTIALLY DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND** |

  Plaintiff Jeremy Ryan, proceeding without an attorney and *in forma pauperis*, is suing defendants Best In Slot, LLC, its principals, and a related entity over alleged misrepresentations. The Court has twice previously dismissed his complaint during mandatory screening. (*See* ECF 4, 9.) Ryan's second amended complaint (ECF 14), however, is sufficiently pleaded to at least partially pass screening.

## DISCUSSION

  The Court must screen and "dismiss an in forma pauperis complaint that fails to state a claim." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citing 28 U.S.C. § 1915(e)(2)). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8 and 12(b)(6).

  The Court dismissed Ryan's first amended complaint, in part, because he failed to "provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" (ECF 9, at 3 (quoting Fed. R. Civ. P. 8(a)(2)).) "In particular," the Court faulted him for providing "no explanation of what he holds a 'stake' in, how such 'stakes' function in this cryptocurrency exchange, or what it means that defendant allegedly switched from a '100% to stakers' approach to a '20% to stakers, 80% to non-stakers' approach." (*Id.*) In many ways, his second amended complaint is subject to the same criticisms. Ryan

1

apparently "acquired and held 105 ordinals and staked them" on defendants' cryptocurrency coin "in reliance on" "the express representation that 100% of the token allocation would be distributed to stakers." (*See* ECF 14, at 5.) Despite there being no explanation of what an "ordinal" is, how Ryan "acquired" them, or what it means to "stake" ordinals in this context, the Court now sufficiently understands the gist of his claims to move on to the merits. (*See generally* ECF 14.)

A.   Screening

   1.  *Contract and Quasi-Contract Claims (Counts 1, 2, & 7)*

In Counts 1, 2, and 7, Ryan alleges contract or quasi-contractual claims. In each, he asserts that defendants "offered and promised a distribution in which 100% of tokens would be allocated to stakers in the BRC 2.0 Punks program, on a score-weighted basis; Plaintiff accepted by staking and continued performance." (ECF 14, at 7.) Ryan "rel[ied] to his detriment by staking and maintaining position." (*Id.* at 8.) Defendants then "breached," at least as to the third of the tokens they've already given out, by "overselling/over-allocating" those tokens, resulting in a "50,000% dilution" of his share under the original promise. (*Id.* at 6, 7.)

Taken as true, these allegations are sufficient to pass the "low threshold for proceeding past the screening stage" and state a breach-of-contract claim. *See Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 924 (9th Cir. 2017); *see also Bodenburg v. Apple Inc.*, 146 F.4th 761, 767 (9th Cir. 2025) ("The elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (cleaned up)). They are likewise sufficient to support his alternative theories of promissory estoppel (Count 2) and unjust enrichment (Count 7). *Graham-Sult v. Clainos*, 756 F.3d 724, 749 (9th Cir. 2014) ("Four elements comprise a promissory estoppel claim: (1) a promise, (2) reasonable and (3) foreseeable reliance by the promisee, and (4) injury to the promisee."); *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 973 (9th Cir. 2024) ("The elements of a cause of action for unjust enrichment are simply stated as receipt of a

benefit and unjust retention of the benefit at the expense of another.").

### 2. *Fraud-Based Claims (Counts 3, 4, 5, & 6)*

The remainder of Ryan's claims—intentional misrepresentation, negligent misrepresentation, unlawful and unfair business practices, and false advertisement—all allege some variation of fraud. Claims sounding in fraud face a higher bar: they "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (holding that false-advertisement and unfair-business-practices claims that are "grounded in fraud" "must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)."). Plaintiff must therefore plead "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Ryan misses on several of these matrices. As to "who," Ryan lumps all "defendants" together in his allegations concerning their actions. In the allegation labeled as providing the fraud's "Who," Ryan asserts that "Defendants represented that 100% of tokens would be distributed to stakers (by promising adherence to published terms which they approved) and that they vet/administer airdrops." (ECF 14, at 8.) "Rule 9(b) does not allow a complaint to merely lump defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (cleaned up). In fraud suits involving multiple defendants, plaintiffs must, at a minimum, "identify the role of [each] defendant[] in the alleged fraudulent scheme." *Id.* at 765.

Similarly, Ryan fails to allege the "when" with specificity. All he offers is: "On specific dates, via the tokenomics page at bestinslot.xyz (URL: BRC 2.0 PUNKS - Ordinal Lockers | [Best in Slot]) and official social posts, Defendants represented that 100% of tokens would be distributed to stakers (by promising adherence to published terms which they approved) and that they vet/administer airdrops." (ECF 14, at 8 (brackets and vertical

line in original).) The "URL" is apparently an internet link, but whatever it is linked to is sufficiently problematic that the Court's system refused to connect to it on security grounds. Regardless, the phrase "[o]n specific dates" lacks specificity, unless it's accompanied by the actual alleged dates.

What's more, there's a third problem with some of these claims: fraudulent intent. Unlike with the issues above, the intent to defraud need only be plausibly pleaded. *See* Fed. R. Civ. P. 9(b); *Iqbal*, 556 U.S. at 686 (holding that fraudulent intent may be alleged "generally," that is "plausibly," rather than meeting the higher particularity standard). But a fraud complaint "must allege more than mere failure to fulfill a promise or perform in the future; rather, it must plausibly allege that the promisor had no intention to perform at the time the promise was made." *Welk Biology Co. v. Hakumo LLC*, No. 2:24-CV-01613-APG-NJK, 2025 WL 2421232, at *12 (D. Nev. Aug. 20, 2025) (cleaned up). Ryan offers no facts to suggest that, at the unknown time the "100% to stakers" representations were made, defendants intended to defraud the would-be stakers. In other words, there's nothing to suggest defendants were lying *at that time*. When those representations were made, defendants may have been completely committed to giving 100% of the allocation to stakers, but due to economic shifts or leadership changes they were later unwilling or unable to. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998–99 (9th Cir. 2014) ("All of the facts Plaintiffs have presented are consistent with both their theory of [fraud] liability and this innocent alternative, that the recession decreased business viability and property values. Plaintiffs have not met their burden to do something more to render their allegations plausible within the meaning of *Iqbal* and *Twombly*." (cleaned up)). To plausibly allege fraudulent intent, Ryan must demonstrate more than that defendants failed to follow through on a previous representation.

So all the fraud-based claims must be dismissed.

**B.     Amendment**

Although some portions of his second amended complaint still do not state a claim, the Court will provide Ryan one last opportunity to amend. By November 14, 2025, he

4

must file a third amended complaint or file a request to proceed on the surviving counts of this complaint alone.

## CONCLUSION

Thus, the Court orders as follows:

1. Counts 3, 4, 5, and 6 of plaintiff's second amended complaint (involving claims of intentional misrepresentation, negligent misrepresentation, unlawful and unfair business practices, and false advertisement) are **DISMISSED**.

2. By **November 14, 2025**, plaintiff must file any third amended complaint. The third amended complaint must be complete by itself without reference to any previous version of the pleading; defendants not named and any claims not re-alleged in that complaint will be considered waived.

3. Alternatively, by that same date, plaintiff may file a notice that he intends to move forward with the remaining claims in the second amended complaint. If so, the Clerk will issue summons and forward a copy of this order to the United States Marshal Service. *See* Fed. R. Civ. P. 4(c)(3).

Dated: October 22, 2025

Andrew G. Schopler
United States District Judge